HIGHLAND FOUNDRY COMPANY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.   March 9, 10, 1908. — June 17, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Railroad*, Liability for injury caused by fire communicated from locomotive.  *Practice, Civil*, Judge's charge, Verdict.  *Jury and Jurors.*

At the trial of an action of tort against a railroad corporation to recover for damages alleged to have been sustained by reason of a building of the plaintiff having been set fire to by a spark communicated from a locomotive engine of the defendant, the plaintiff contended that such spark might have entered the building in any one of three ways, and the defendant requested that a verdict be directed for it, and excepted to a refusal of the presiding judge to grant the request.  There was a verdict for the plaintiff.  This court, without review-

ing the evidence in detail, *held*, that there was evidence from which the jury were warranted in finding that a spark might have entered the plaintiff's building from the defendant's locomotive in either of two of the ways suggested by the plaintiff, and overruled the defendant's exception.

The trial of an action of tort against a railroad corporation to recover for damages alleged to have been sustained by reason of a building of the plaintiff having been set fire to by a spark communicated from a locomotive engine of the defendant lasted a week, and was given to the jury at 2.30 P. M. on a certain day. The jury remained in continuous session until 10.30 the next morning, when they returned into court and requested further instructions from the judge on points of law. The judge, after stating to them the importance to the litigants of their reaching a verdict, continued: " I need not say to you, as has been said in other cases, that you can decide it as well as anybody else can; of course you can. . . . To say that you cannot decide this case is to say that another jury of twelve men cannot do it; and justice will be defeated in the end if that is so, as you understand. Therefore it is almost a necessity that you should come to some reasonable conclusion upon this case. And of course, in coming to that conclusion, it is a give and take argument that you make, necessarily. You are not to report to me, when you come in here, twelve individual verdicts. You are to give a verdict which, on the principle of give and take, represents the consensus verdict of you as a unit, as a body of men. Supposing you were sitting together as a board of directors in a corporation, and should fight over your policy. . . . In some way, you have to adjust your differences; you have to come to some conclusion in the end which will permit the business to go on. Now you can do that just as well here, and a good deal better, as representing somebody's else business, than you could if it were your own business, because your pocketbook is not interested. . . . We do not care anything about individuals or individual pocketbooks or individual interests. But we are absolutely desirous that so far as our minds go we shall be mentally honest, and we are absolutely desirous that right shall come out of these hearings, absolute right, so far as we can see it." *Held*, that the charge was erroneous in seeming to urge the importance of an agreement among the jurors by a compromise of their honest individual opinions, and in failing to make sufficiently prominent the idea that the verdict should be the conscientious verdict of each juror.

TORT to recover for damages resulting to the plaintiff from a fire in its foundry alleged to have been caused by a spark from a locomotive of the defendant. Writ in the Superior Court for the county of Suffolk dated October 18, 1899.

There was a trial before *Pierce*, J., and a verdict for the plaintiff in the sum of $12,173. The defendant alleged exceptions.

The facts are stated in the opinion.

*C. F. Choate, Jr.*, for the defendant.

*E. P. Saltonstall*, (*P. G. Bolster & C. W. Blood* with him,) for the plaintiff.

HAMMOND, J. The first question in this case is whether the

evidence was sufficient to warrant a finding that a spark from a locomotive of the defendant caused the fire which damaged the property of the plaintiff.

It seems to be conceded on all sides that the fire did not first appear upon the outside of the building. And the only possible ground upon which it can be contended that the fire was started by a locomotive spark is that the spark entered the building and started the fire on the inside. It is strongly argued by the defendant that in view of the nature and location of the fire and the construction of the building this fire could not have been started by a spark coming from the outside. On the contrary the plaintiff contends that a spark might have entered the building in either one of three ways, either through the south ventilator, the north ventilator or the crack in the roof. A discussion of the bearing and weight of the evidence would require a long, detailed description of the construction of the building and the ravages and location of the fire. We have carefully considered all the evidence. The case is very close. If the plaintiff's case rested upon the theory that the spark came down through the south elevator, we should say that the evidence is not sufficient to sustain it, and that a verdict should have been ordered for the defendant. But as respects the north ventilator or the crack in the roof we do not think it can be ruled as matter of law that a spark could not have entered by the way of either into the pattern room and have caused such a fire as appears to have occurred.

There was evidence from which the jury might properly have concluded that sparks were occasionally emitted from the defendant's engines, and that the direction and force of the wind on the day of the fire were such as to carry such sparks towards the pattern room where the fire originated. The evidence of the plaintiffs tended to show, moreover, that there was no reasonable probability that the fire originated from any cause connected with the nature of the buildings, the management of the business or with the acts, negligent or otherwise, of the workmen or other persons in and about the factory. In view of these circumstances in connection with the other evidence the jury may have come to the conclusion that the only reasonable explanation of the fire was that it had its origin in a spark from

a locomotive belonging to the defendant. We cannot say as matter of law that such a conclusion was not warranted by the evidence. See among other cases, *McGinn* v. *Platt,* 177 Mass. 125; *St. Louis, Iron Mountain & Southern Railway* v. *Dawson,* 77 Ark. 434; *Gibbons* v. *Wisconsin Valley Railroad,* 66 Wis. 161; *Wilson* v. *Northern Pacific Railroad,* 43 Minn. 519.

But we are of opinion that the defendant has reasonable cause to complain of the instructions given to the jury, and that for that reason the exceptions must be sustained. After a trial lasting several days, the case was given to the jury at half past two o'clock in the afternoon of June 11, 1907. They remained out until half past ten in the morning of June 12, when they returned into court requesting further instructions on points of law. Before proceeding to give these further instructions the presiding judge addressed the jury in the following language: " Gentlemen, I am extremely sorry that the exigencies of this case require that you should be put to this trouble and discomfort. But we have been trying the case a week, as you know, and it is a matter of very great importance to all persons concerned that this should be decided now, and not go over for a long time, with the possible loss of further testimony as the months and years roll by, the loss of the use of the money, if the verdict should be for the plaintiff, and all things that you may naturally think of which make it a hardship that this case should not be decided. I need not say to you, as has been said in other cases, that you can decide it as well as anybody else can ; of course you can. You are just as able, as mentally strong and as honest as any jury that will be ever gathered together again in this court; and to say that you cannot decide this case is to say that another jury of twelve men cannot do it; and justice will be defeated in the end if that is so, as you understand. Therefore it is almost a necessity that you should come to some reasonable conclusion upon this case. And of course, in coming to that conclusion, it is a give and take argument that you make, necessarily. You are not to report to me, when you come in here, and to the court, twelve individual verdicts. That is not what you will have. You are to give a verdict which, on the principle of give and take, represents the concensus verdict of you as a unit, as a body of men. Supposing

you were sitting together as a board of directors in a corporation, and should fight over your policy, you know that if you all stood out and some man said, ' Why, I will not sell this unless I get so much,' and another man said he wouldn't sell unless he got something else, and they wouldn't do this or they wouldn't do that, the corporation would soon become insolvent; it would come to a stop.   In some way, you have to adjust your differences; you have to come to some conclusion in the end which will permit the business to go on.   Now you can do that just as well here, and a good deal better, as representing somebody else's business, than you could if it were your own business, because your pocketbook is not interested.   It is a matter of entire indifference to you, of course, as to whether one man, as a man, recovers ; just as it is a matter of indifference to me, in the determination of these cases, as to who recovers.   I do not care a cent about that ; I am utterly indifferent, just as I know you are, except that we are both anxious that the right shall prevail.   That is all we are here for.   We do not care anything about individuals or individual pocketbooks or individual interests.   But we are absolutely desirous that so far as our minds go we shall be mentally honest, and we are absolutely desirous that right shall come out of these hearings, absolute right, so far as we can see it."

It is argued by the plaintiff that these remarks were strictly within the line of propriety, and in support of that contention counsel have cited *Commonwealth* v. *Tuey*, 8 Cush. 1, *Commonwealth* v. *Whalen*, 16 Gray, 25, *Commonwealth* v. *Poisson*, 157 Mass. 510, *McCoy* v. *Jordan*, 184 Mass. 575.   There is perhaps no case in our reports more familiar to those, whether on the bench or at the bar, who are engaged in the trial of jury cases, than *Commonwealth* v. *Tuey*.   It is often quoted or read to juries slow in coming to a verdict, and many times with salutary effect.   But it generally has been regarded by the profession as going nearly if not quite to the extreme limit.   The charge to which exception was taken in that case was made in a trial in the Court of Common Pleas, by a judge who afterwards became a conspicuous judge of this court, and who enjoyed the reputation of being one of the most accomplished jurists of the Commonwealth.   In delivering the charge he was treading on

delicate ground, and evidently was aware of that fact. His words seem to have been chosen with great care. He stated to the jury that the case must at some time be decided and that there was no reason to suppose that the case ever would be submitted to any more impartial or competent jury than they were, or that clearer evidence would be produced, and that it was their duty to decide the case if they could conscientiously do so. He further said that in conferring together they " ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments." But at the same time he was careful to say that " the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows." In overruling the exceptions this court, speaking through Bigelow, J., said : " The instructions went no further, than to say, that if any of the jury differed, in their views of the evidence, from a large number of their fellows, such difference of opinion should induce the minority to doubt the correctness of their own judgments, and lead them to a reëxamination and closer scrutiny of the facts in the case, for the purpose of revising and considering their preconceived opinions. In this view, the court did nothing more than to present to the minds of the dissenting jurors a strong motive to unanimity." In short, while the jury were told that in coming to a conclusion as to the merits of the controversy submitted they might take into consideration the importance of a verdict, and their duty to reach one if they consistently could, and that they also should pay due respect to the opinions of others, yet they were carefully told that " the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows."

We think the charge in the case before us went much further than *Commonwealth* v. *Tuey.* In the present case the jury were told not only that they could decide the case " as well as anybody else can," but also that " to say that you cannot decide this case is to say that another jury of twelve men cannot do it ; and justice will be defeated in the end if that is so, as you understand. Therefore it is almost a necessity that you should come to some reasonable conclusion upon this case. And of

course in coming to that conclusion, it is a give and take argument that you make, necessarily.   You are not to report to me, when you come in here, and to the court, twelve individual verdicts. . . . You are to give a verdict which, on the principle of give and take, represents the consensus verdict of you as a unit, as a body of men." Then follows the illustration as to the manner in which the board of directors of a corporation conduct business.   It is true that at the end he says that they should be " honest " and " desirous that right . . . [should] . . . come out these hearings, absolute right, so far as we can see it." But taking the charge as a whole we think that it puts the pressure on too hard, and fails to make sufficiently prominent the idea that after all the verdict should be the conscientious verdict of each juror.   The ordinary juror in listening to this language may well have been led to believe, not simply that in making up his own mind he should give due weight to the opinions of his fellows, but that such was the necessity of agreement upon a verdict that he was justified in making some kind of a compromise between his own conscientious convictions and those of his fellows.   We do not for a moment entertain the idea that it was the intention of the presiding judge to impress the jurors with any such thought.   The trial had lasted a week; the question to be decided by the jury was close and likely to lead to difference of opinion; it was important for the interests of all concerned that a verdict should be reached if possible, and the words were addressed to a jury probably much fatigued by the deliberation of twenty hours. Under these circumstances the learned judge was suddenly called upon for further instructions.   He thought that he would improve the opportunity to say a few words about the importance of reaching a verdict, and with his mind fastened upon that idea he failed to realize the full force of his extemporaneous words and the interpretation likely to be given to them by a weary jury.

*Exceptions sustained.*