Lucy Veiga[1] & another[2] vs. Peter Schochet & another.[3]

No. 03-P-525.

Suffolk. March 12, 2004. - November 8, 2004.

Present: Cypher, Dreben, & Trainor, JJ.

*Jury and Jurors. Practice, Civil,* Deliberation of jury, Mistrial. *Statute,* Construction.

At a civil trial, the judge's statements to jury members indicating her belief that the trial would be concluded before a holiday weekend did not amount to improper coercion of the jury, despite the fact that the jury delivered their verdict late in the afternoon on the Friday before the holiday weekend, where it was clear from the record that the judge was merely stating her belief regarding when the trial would be over rather than imposing any kind of deadline on the jury. [442-443]

At a civil trial, the judge did not violate the requirements of G. L. c. 234, § 34, by allowing the jury to continue deliberations without obtaining their consent after the jury had sent the judge two notes stating that the jury were deadlocked, where the judge was warranted in concluding, based on the content of the notes, the continuing deliberations, and the amount of time that the jury had deliberated, that the jury had not completed due and thorough deliberations when they sent their notes. [443-444]

Civil action commenced in the Superior Court Department on March 31, 1995.

The case was tried before *Carol Stroud Ball*, J.

*Eric S. Kupperstein* for the plaintiff.

*William J. Dailey, Jr.*, for the defendants.

Trainor, J. After trial in the Superior Court on the plaintiffs' medical negligence claims, a jury returned a verdict in favor of the defendants. The plaintiffs appeal from the judgment and the denial of their motion to vacate the judgment, declare a mistrial, and order a new trial, contending that the jury were coerced

---

[1]Individually and as administratrix of the estate of Brian Veiga.

[2]Cassandra Veiga, a minor, by her parent and next friend Lucy Veiga.

[3]Andrew Colin.

into delivering a verdict and that the judge violated G. L. c. 234, § 34, which guards against jury coercion. See *Commonwealth v. Jenkins*, 416 Mass. 736, 737 (1994). Concluding that there was no coercion of the jury, either within the meaning of G. L. c. 234, § 34, or as an independent matter, we affirm.

The plaintiffs' claims require us to consider two related but distinct and independent ways in which the jury could have been coerced into delivering a verdict. First, we must consider whether the judge's statements to jury members indicating her belief that the trial would conclude before a holiday weekend amounted to coercion of the jury in light of the fact that the jury delivered their verdict late in the afternoon on the Friday before the holiday weekend. Next, we must consider whether the judge violated the requirements of G. L. c. 234, § 34,[4] by allowing the jury to continue deliberations, without obtaining their consent, after the jury had sent the judge two notes stating that the jury were deadlocked.

Prior to the empanelment of the jury, the judge told members of the jury pool that she expected that the trial could extend into the last week of August and that she believed it would be concluded by Labor Day. This notion was repeated in the judge's response to hardship questions from potential jurors and in response to a question from a seated juror. The plaintiffs contend that during the course of the trial, the judge made similar statements suggesting the jury would be finished with their service prior to Labor Day.[5]

The jury started deliberations on fourteen questions on a special verdict form on the morning of Thursday, September 2, 1999. Deliberations were stopped at 2:00 P.M. because one of the jurors had indicated a need to leave at that time. The jury

---

[4]Section 34 reads as follows: "If a jury, after due and thorough deliberation, return to court without having agreed on a verdict, the court may state anew the evidence or any part thereof, explain to them anew the law applicable to the case and send them out for further deliberation; but if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."

[5]In support of their motion to vacate judgment, counsel for the plaintiffs filed an affidavit alleging such statements were made by the judge during times when the proceedings were not recorded, such as morning greetings to the jury.

resumed deliberations the next day, Friday, September 3. At 11:10 A.M. they sent the judge a note stating, "Currently, we are at deadlock. However, if we were to have the following two questions answered, we may be able to continue. 1) Is there a difference between a mistake and negligence? 2) Please re-read jury instructions for Q1 and Q3." After discussion with the parties' attorneys, the judge decided to answer both questions by rereading the instructions for questions one and three. After the judge reread the instructions, and before resuming deliberations, the jury gave the judge a note asking, "Could we please have available a black board to write on for deliberation?" The note was marked to indicate that it was written at noon. The judge directed that the jury be given a blackboard to use and the jury continued deliberations until they sent a third note.[6] In the third note, the jury stated, "We are currently still deadlocked. We would appreciate to hear the reading of the Jury instruction on Question 1." The judge complied with the request. Subsequently, the jury returned their verdict finding the defendants not negligent, and judgment was entered for the defendants.[7]

The plaintiffs filed a motion asking the judge to vacate the judgment, declare a mistrial, and order a new trial. In denying the motion, the judge wrote, "In my view, the jury's use of the word 'deadlock' was based on a lay, rather than legal, understanding of that word. By requesting further instruction on the law, they implicitly consented to continue their deliberations. The *Rodriquez* charge was never given or in order here. There was no coercion."[8]

On appeal, the plaintiffs contend that the jury were coerced into delivering their verdict because the judge advised the jury that she believed the trial would be concluded by Labor Day. We disagree. It is clear from the record that the judge was merely stating her belief regarding when the trial would be over

---

[6]Unlike the first two notes, the third note did not indicate the time it was written. The plaintiffs allege that it was sent four hours after the jury resumed deliberations.

[7]According to the plaintiffs' counsel, the verdict was returned at 4:30 P.M. The defendants do not dispute the assertion, but note that the record does not indicate when the verdict was returned.

[8]See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973).

rather than imposing any kind of deadline on the jury.[9] We conclude the judge's statements of belief in no way constituted coercion. See *Commonwealth* v. *Jenkins*, 416 Mass. at 737-738.

The plaintiffs also contend that the jury were coerced into returning a verdict within the meaning of G. L. c. 234, § 34, because the judge directed the jury to resume deliberations without explicitly obtaining their consent after the jury members had twice indicated they were deadlocked. We disagree and conclude that "neither the spirit nor the letter of § 34 was violated." *Id.* at 738.

"General Laws c. 234, § 34, stands guard to prevent jurors, after 'due and thorough' deliberations, from being coerced into reaching a verdict in the face of views conscientiously reached and held." *Commonwealth* v. *Winbush*, 14 Mass. App. Ct. 680, 682 (1982). By its terms, the statute is only operative after a jury has engaged in "due and thorough" deliberations. Whether a jury has engaged in "due and thorough deliberation" within the meaning of the statute is a matter of discretion for the trial judge. *Commonwealth* v. *Keane*, 41 Mass. App. Ct. 656, 658-659 (1996). See *Commonwealth* v. *Valliere*, 366 Mass. 479, 496 (1974); *Commonwealth* v. *Winbush*, *supra* at 682; *Commonwealth* v. *Jenkins*, 34 Mass. App. Ct. 135, 141 (1993), *S.C.*, 416 Mass. 736 (1994); *Commonwealth* v. *Mayne*, 38 Mass. App. Ct. 282, 289 (1995).

Though the jury used the words "deadlock" and "deadlocked" in their notes, it is clear from the record that the words

___

[9]Consideration of the factual allegations in the affidavit of the plaintiffs' counsel, which are not supported by record citations, would not alter our conclusion that the judge's statements did not amount to coercion. The judge's recorded comments were made at the start of the proceedings, and the assertions of the plaintiffs' counsel notwithstanding, see note 5, *supra*, there is no indication in the record that she made similar comments during the course of the trial. Furthermore, the judge indicated that she was willing to extend deliberations past the holiday when she commented, during discussion with counsel on how to answer the jury's first note, "If we let it go too long, what we're going to do is, I'm going to send them home at fourish, and tell them to come back Tuesday morning," and "if we have to come back Tuesday, we'll come back Tuesday." Though these comments were made to counsel outside the presence of the jury, they reflect the judge's attitude regarding the length of the jury's deliberations. It is reasonable to assume that any communication the judge may have had with the jury that was not captured in the record would have been consistent with this attitude.

were not meant to indicate a hopeless inability to continue with deliberations. To the contrary, each note asked for assistance and clearly represented a belief that with such assistance deliberations could continue. In each of the notes that used a form of the word "deadlock," the jury modified the term with the word "currently," indicating that there was an expectation or at least a possibility that deliberations could continue productively. The first note explicitly states that the jury felt they might be able to continue deliberating if their questions were answered. The second note is relevant to this analysis because the jury specifically asks for a blackboard to use during deliberations. The third note is less explicit, but it is reasonable to infer that the request to have an instruction read again indicated that it would be helpful in moving the deliberations forward.

In the circumstances of this case, the judge was warranted in concluding that the jury had not completed "due and thorough" deliberations when they sent the notes. Each note suggested that the process of deliberating was ongoing rather than over. As she noted in her denial of the plaintiffs' motion, the judge had not concluded that it was necessary to read the jury a *Rodriquez* instruction. See *Commonwealth* v. *Jenkins*, 34 Mass. App. Ct. at 141 (giving a *Rodriquez* charge an indication that judge had concluded jury's deliberations were "due and thorough"). Given the content of the notes, the continuing deliberations, and the amount of time the jury had deliberated,[10] the judge's conclusion was well within her discretion.

We conclude that the judge did not coerce the jury when she indicated a belief that the trial would be concluded by a certain date and that the judge did not violate G. L. c. 234, § 34.

*Judgment affirmed.*

*Order denying motion to vacate judgment, declare a mistrial, and for a new trial affirmed.*

---

[10]According to the plaintiffs, the jury deliberated for approximately ten hours before sending the last note to the judge.