COMMONWEALTH vs. MICHAEL O'BRIEN.

No. 04-P-807.

Middlesex. May 6, 2005. - December 12, 2005.

Present: COWIN, DREBEN, & GRAHAM, JJ.

*Practice, Criminal,* Jury and jurors, Instructions to jury, Verdict. *Jury and Jurors.*

The judge at a criminal trial did not err by giving the jury supplemental instructions, where the instructions did not suggest to any reasonable juror that he or she was compelled to reach a verdict and therefore were not impermissibly coercive. [294-297]

INDICTMENT found and returned in the Superior Court Department on December 9, 1999.

The case was tried before *Charles M. Grabau,* J.

*Robert F. Shaw, Jr.,* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

COWIN, J. A Superior Court jury found the defendant, Michael O'Brien, guilty of possession of cocaine with intent to distribute in violation of G. L. c. 94C, § 32A.[1] On appeal, the defendant claims that the trial judge erred by giving supplemental instructions that led the jury wrongfully to believe that they were obligated to return a unanimous verdict one way or another, and that disagreement (and a possible mistrial) was not an option. We conclude that the instructions in question did not suggest to any reasonable juror that he or she was compelled to reach a verdict, and therefore were not impermissibly coercive. Accordingly, we affirm. At the same time, we recognize that a perception on the part of jurors that they are unable to decide the case,

---

[1]Following the jury verdict, a jury-waived trial was held before the trial judge, who found the defendant guilty of the "second or subsequent offense" portion of the indictment.

even if premature, poses a task of some subtlety for the trial judge, and we comment briefly thereon.

1. *Underlying facts and testimony.* The defendant acknowledges that the evidence was sufficient to go to the jury. On the basis of that evidence, the jury could have found the following. On the evening of August 27, 1999, officers from the Woburn and Wilmington police departments, working on a multi-jurisdictional task force, observed the defendant's truck at an Exxon gasoline station in Woburn. Because the officers were aware that warrants for the defendant's arrest were outstanding, they pulled up alongside the truck. When the defendant approached from across the parking lot, he was arrested.

As Officer Angelo Piazza, the arresting officer, handcuffed the defendant, the defendant unsuccessfully attempted to reach into his right pocket. After reading the defendant his rights, the officers searched the defendant for weapons and placed him in the back of a police cruiser. While the defendant was sitting in the back of the cruiser, Officer Piazza observed him pull from his pocket a plastic baggie, which Officer Piazza seized.

The defendant was brought back to the Woburn police station and booked. During the booking procedure, the police took possession of a pager, identification cards in the name of William Mello, a small piece of paper with handwritten notations, $461 in cash, and a small package containing a white substance. The white substance was later tested and revealed to be 11.52 grams of cocaine. The defendant's pager went off repeatedly during booking, and the defendant was jittery and sweating profusely while he was in police custody.

The jury could also permissibly credit the testimony of State Trooper Mark Frenzo regarding typical cocaine sales and distribution in Massachusetts. He testified that, in Woburn in 1999, cocaine was sold for approximately eighty dollars per gram. He stated that low-level cocaine dealers often carried the cocaine they were selling in clear plastic baggies, and that customers commonly contacted dealers via pagers. He also stated that cocaine could be bought in almost any quantity by either a dealer or a user.

The defendant conceded that he had been in possession of cocaine when he was arrested, but asserted that the cocaine in

his possession was for personal use, rather than for distribution.[2] The defendant supported this contention with evidence that he appeared to be under the influence of cocaine when he was arrested, as well as with evidence that he was on public assistance at that time (presumably in support of an inference that, if he were dealing drugs, he would not be in need of welfare). The defense relied also on the expert testimony of Alan Wartenberg, M.D., the medical director of the addiction recovery program at Faulkner Hospital in Boston. Dr. Wartenberg reviewed the defendant's treatment records and spoke to him about his history of cocaine and alcohol abuse. Dr. Wartenberg opined that the defendant was addicted to cocaine in 1999, and that his possession of 11.53 grams of cocaine could be consistent with his personal use at that time. Dr. Wartenberg testified further that, while use of over eleven grams of cocaine at one time would be "in the upper end of what we see," he had treated patients who used up to thirty grams or one ounce of cocaine in a twenty-four hour period.

2. *The instructions.* At the close of the evidence, the judge instructed the jury as to the presumption of innocence, the Commonwealth's burden of proving its case beyond a reasonable doubt, the elements of the charged offenses, and the requirement that any verdict be unanimous. The judge's instructions as to unanimity included the following:

> "So twelve of you are going to have to decide whether the Commonwealth has proved beyond a reasonable doubt whether the defendant is guilty or not guilty. So the first choice [on the verdict slip] is a box which next to it has 'not guilty.' So twelve of you will have to agree if the defendant is guilty or not guilty. The second choice is guilty of the offense as charged. The offense charged is right underneath where it says 'verdict slip.' It says, possession of cocaine with intent, with intent to distribute. The third choice is guilty of a lesser-included offense of possession, simple possession, of cocaine."

The defendant did not object to any of these instructions.

---

[2] The defendant agreed at oral argument that a judgment of conviction of the offense of simple possession would be proper.

Shortly after beginning their deliberations, the jury sent a note to the judge stating, "We have reached an impasse." The judge conferred with counsel in his lobby, where it was agreed that it was too early in the deliberations to give a so-called *Tuey-Rodriquez* charge,[3] and that instead the judge would merely review with the jury the options on the verdict slip. Accordingly, the jury were brought in, and the judge gave the following supplemental charge:

> "At this point in time, ladies and gentlemen, I can only assist you by reviewing the options you have with respect to the verdict slip. Again, I have to inform you, instruct you, that your verdict must be a unanimous verdict. You have to agree, all twelve of you must agree, on the verdict. You have several choices. You can find the defendant not guilty or you can find him guilty. Now, you can find him guilty of the offense as charged. All twelve of you can agree that he is guilty of possession of cocaine with intent to distribute. If you find that the Commonwealth has not proven this crime beyond a reasonable doubt, then you may consider whether the Commonwealth has proven the lesser-included offense of possession of cocaine. All twelve of you must agree that the Commonwealth has proven this charge before I can accept a verdict. Again, on any decision you make, it has to be a unanimous decision. The verdict slip has to be signed by the foreperson and dated the day you finish your deliberations."

The defendant did not object to this supplemental instruction. The jury resumed deliberations and, on the morning of the second day of deliberations, returned a verdict of guilty of possession with intent to distribute.

3. *Discussion.* When instructing the jury, a judge must avoid language that may coerce the jury into reaching a verdict. See *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 34 (1984). "A judge crosses the line between enlightening the jurors' understanding and coercing them when 'he overcomes the will by the weight of his authority.' " *Ibid.*, quoting from *Horning* v. *District of Columbia*, 254 U.S. 135, 139 (1920) (Brandeis, J.,

---

[3]See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A).

dissenting). One instance of such coercion is insistence by the judge that a verdict be reached. See *Jenkins* v. *United States*, 380 U.S. 445, 446 (1965) (judge's statement, "You have got to reach a decision in this case," held coercive).

There is a special danger of jury coercion where a judge's supplemental instructions are addressed to a jury whose deliberations have reached a point of deadlock. See *United States* v. *Angiulo*, 485 F.2d 37, 39 (1st Cir. 1973); *United States* v. *Manning*, 79 F.3d 212, 222 (1st Cir.), cert. denied, 519 U.S. 853 (1996). Generally, where the judge apprehends that the jury are deadlocked, the *Tuey-Rodriquez* charge, as set forth in *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A), may be given. Whether the jury are deadlocked, and whether the *Tuey-Rodriquez* charge should be given at a particular time, are matters that are addressed to the discretion of the trial judge. See *Commonwealth* v. *Fernandes*, 30 Mass. App. Ct. 335, 345 (1991); *Commonwealth* v. *Bacigalupo*, 49 Mass. App. Ct. 629, 638 (2000); *Veiga* v. *Schochet*, 62 Mass. App. Ct. 440, 443-444 (2004).

Because the *Tuey-Rodriquez* charge has a "sting," however, it should not be used prematurely, and when it is given, digression from its recommended language is discouraged. See *Commonwealth* v. *Fernandes*, supra; *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. 367, 374-375 (1997). In instructing a deadlocked jury, a judge may not depart from the *Tuey-Rodriquez* charge with language compelling the jury to reach a verdict, such as stating that "the case must at some time be decided." *Commonwealth* v. *Rodriquez*, 364 Mass. at 98-99. See *Jenkins* v. *United States*, 380 U.S. at 446; *United States* v. *Angiulo*, 485 F.2d at 39; *United States* v. *Manning*, 79 F.3d at 222. Such a statement is not only inaccurate, but it also may lead jurors to believe that they should compromise their own conscientious convictions in order to reach a verdict. See *Highland Foundry Co.* v. *New York, N.H. & H.R.R.*, 199 Mass. 403, 409 (1908); *Commonwealth* v. *Rodriquez*, supra. Suffice it to say that when a *Tuey-Rodriquez* charge is given, the judge must be particularly vigilant that there not creep into the phraseology any suggestion that the jurors are obligated to decide the case one way or another.

In the present case, however, there are two significant factors that convince us that the judge's supplemental instructions had no coercive effect. First, upon receiving the jury's note that they were at an "impasse," the judge concluded, in our view properly, that it was too early in the deliberations to assume that the jury were in fact deadlocked, and that a *Tuey-Rodriquez* charge would therefore be premature. Indeed, the defendant does not challenge this decision. Given that a *Tuey-Rodriquez* instruction was not delivered, the concern that a departure from approved *Tuey-Rodriquez* language could have an unintentional coercive effect is not applicable.

Second, while we agree with the defendant that instructions given to a jury that have not reached the point of deadlock may have an impermissibly coercive effect as well, we conclude that the supplemental instructions given in this case could not reasonably have been misunderstood. These instructions reiterated the possible verdicts, and emphasized that the decision to reach any of these verdicts must be unanimous. They were given in a context in which it was clear that the judge was explaining *how* a verdict could be arrived at *if* there were a verdict. Indeed, by what we think is necessary implication, the instructions served to remind the jury that, absent unanimity, a verdict could not be returned. We see nothing in the judge's language that suggested an obligation to decide.

We do, however, make the following observations. While, as we have indicated, the judge permissibly determined that the jury could not yet be deemed deadlocked and a *Tuey-Rodriquez* charge would be premature, the jury themselves believed that, in their words, "We have reached an impasse." It seems reasonable to us that the jury's perception be acknowledged in some fashion. In so doing, a judge must exercise caution that the jury not be encouraged to give up the effort to reach unanimity, while at the same time ensuring that the jurors understand that conscientious disagreement is nevertheless acceptable.

To this end, the references in *Commonwealth* v. *Rodriquez*, 364 Mass. at 98, 100-101, to the report, Standards Relating to Trial by Jury of the American Bar Association's Advisory Committee on the Criminal Trial, are worthy of note. The *Rodriquez* decision cited Standard 5.4 with approval and set forth the text

in Appendix B to the opinion. The standard states, in relevant part, that a judge may, before the jury retire to deliberate, instruct:

> "(i) that in order to return a verdict, each juror must agree thereto;
>
> "(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> "(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
>
> "(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
>
> "(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict."

*Commonwealth* v. *Rodriquez,* 364 Mass. at 102 (Appendix B).

In *Commonwealth* v. *Rodriquez, supra,* the Supreme Judicial Court approved language drawn from the above-quoted American Bar Association standard, and advised that it "is intended for use either as part of the original instructions to the jury or as a supplemental instruction when the jurors appear to be running into difficulty reaching a verdict." *Id.* at 101. The language is plainly intended to serve the useful function of communicating to jurors the nature of their obligations in circumstances short of the true deadlocks that require use of the *Tuey-Rodriquez* charge, and there should be resort to it at appropriate times.

*Judgment affirmed.*