NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1873                                        Appeals Court

COMMONWEALTH  vs.  KRISTIE L. FIRMIN.

No. 14-P-1873.

Middlesex.     November 6, 2015. - February 10, 2016.

Present:  Katzmann, Milkey, & Carhart, JJ.

Constitutional Law, Jury.  Jury and Jurors.  Practice, Criminal,
      Instructions to jury.

Complaint received and sworn to in the Framingham Division
of the District Court Department on February 29, 2012.

The case was tried before Douglas W. Stoddart, J.

Jin-Ho King for the defendant.
Charles Koech, Assistant District Attorney, for the
Commonwealth.

CARHART, J.  The defendant appeals from her conviction by a

District Court jury of operating under the influence of alcohol,

second offense, G. L. c. 90, § 24(1)(a)(1), on the basis that

the trial judge gave a coercive jury instruction.[1]  We agree.[2]

_____

[1] Charges of negligent operation of a motor vehicle and
operating a motor vehicle with a suspended license, subsequent

Background.  In the early morning hours of February 29, 2012, a Framingham police officer stopped a vehicle he had been following after he observed it making some erratic movements. The officer determined that the defendant was driving, and that she was under the influence of alcohol.  The defendant was arrested and tried for operating a motor vehicle under the influence of alcohol.

After closing arguments and following his general instructions on the law, the trial judge stated:

> "If I can give you some helpful hints -- because we do this every day -- it's not fun or easy to be a juror, we know that.  So, to the extent that you could create a collegial atmosphere in the room, that would be great.  So, when the door shuts, it would be very helpful if people didn't make pronouncements, you know, 'This is the way I'm going to vote', because then it's hard to extract somebody from a corner and our goal is to get a unanimous verdict.
>
> "If we don't get a unanimous verdict, it's called a mistrial or a hung jury and we have to do this case all over again and we're booked out until May now.[3]  So, we'd really appreciate it if you guys could resolve this.  So, I guess I would suggest that, maybe let everybody, you know, just chat informally, not take formal votes right away and then, at some point during the deliberations, if you see a ground swell of support in one direction or the other, then

offense, were dismissed.  The defendant was found not responsible for speeding and a marked lanes violation.

[2] The defendant also claims that the prosecutor committed error creating a substantial risk of a miscarriage of justice when she argued facts not in evidence during closing argument. Based on the outcome of this opinion, that claim need not be reached.

[3] The trial took place on January 24, 2013.

do whatever voting or whatever you need to do to get to that ultimate point."

The judge continued, "Now, in terms of timing, I think what we'll do is give you the case now, but we're going to cut you loose at one o'clock.  If you have a verdict real quick before 1:00, we'll take it, but otherwise, we'll see you back at 2:00." Court adjourned at 12:41 P.M. and the jury went to lunch from 1 P.M. until 2 P.M.  Court reconvened at 2:28 P.M., whereupon the jury delivered the verdict.

Discussion.  Because the defendant did not object to the judge's instruction, we review only to determine "whether the timing [or the content] of the charge [was error] creat[ing] a substantial risk of a miscarriage of justice." Commonwealth v. Scanlon, 412 Mass. 664, 678 (1992).  We agree with the defendant that the timing and content of the judge's instruction created such a risk in this case.

"The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant the right to a trial by an impartial jury." Commonwealth v. Guisti, 434 Mass. 245, 251 (2001).  "Article 29 of the Massachusetts Declaration of Rights also guarantees 'the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit.'" Guisti, at 251 n.8.  An "impartial" jury consists of "jurors who will

conscientiously apply the law and find the facts." Wainwright v. Witt, 469 U.S. 412, 423 (1985). While "[t]he weight and credibility of the evidence is the province of the jury," Commonwealth v. Gomez, 450 Mass. 704, 711 (2008), jurors must "apply the law as interpreted by the court." United States v. Boardman, 419 F.2d 110, 116 (1st Cir. 1969), cert. denied sub nom. Boardman v. United States, 397 U.S. 991 (1970). Thus "[w]hen instructing the jury, a judge must avoid language that may coerce the jury into reaching a verdict." Commonwealth v. O'Brien, 65 Mass. App. Ct. 291, 294 (2005). See Commonwealth v. Villafuerte, 72 Mass. App. Ct. 908, 910 (2008).

Here, the judge gave an instruction similar to that set forth in Commonwealth v. Tuey, 8 Cush. 1, 2-3 (1851), as modified by Commonwealth v. Rodriquez, 364 Mass. 87, 98-101, 101-102 (1973) (Appendix). The so-called Tuey-Rodriquez charge "is an instruction designed to encourage the jury to reach a verdict, if possible," Commonwealth v. Bresnahan, 462 Mass. 761, 766 n.4 (2012), and it is "the 'orthodox approach' to dealing with a deadlocked jury." Ray v. Commonwealth, 463 Mass. 1, 6 (2012). In pertinent part, the instruction provides:

> "[T]he verdict to which a juror agrees must . . . be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that it is desirable that the

> case be decided. . . . [I]t is your duty to decide the case, if you can conscientiously do so. . . . [I]n conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments."

Rodriquez, supra at 101 (Appendix).

We recognize that "[n]otification that the jury are deadlocked is not a prerequisite for the [Tuey-Rodriquez] charge; rather, it is within the judge's discretion to give it." Commonwealth v. Wilson, 443 Mass. 122, 143 (2004). However, we think that the judge abused his discretion here, when he instructed the jury, before it had begun deliberating, that (1) the jurors should "do whatever voting or whatever [they] need to do" to reach a verdict "if [they] see a ground swell of support in one direction or the other" because, "[i]f we don't get a unanimous verdict . . . we have to do this case all over again and we're booked out until May now"; (2) the court would "really appreciate it if [the jury] could resolve this"; and (3) the court would take a verdict if the jury reached one between 12:41 P.M., when they adjourned to deliberate, and 1:00 P.M., when they recessed for lunch.

"The purpose of the [Tuey-Rodriquez] instruction is to encourage a purportedly deadlocked jury to consider seriously and with an open mind the views and arguments of each member." Ray, supra at 3 n.3. See Commonwealth v. Jenkins, 416 Mass. 736, 747-748 (1994) (Liacos, J., dissenting). It "is designed

to urge the jury to reach a verdict by giving more serious consideration to opposing points of view." Commonwealth v. Carnes, 457 Mass. 812, 827 (2010). Because it "has a 'sting' and can, if improperly phrased or improvidently given, risk 'coercion' of the jury to reach a verdict with which they are not fully comfortable," Ray, supra at 6, quoting from Rodriquez, supra at 100, a Tuey-Rodriquez charge "should not be employed prematurely or indiscriminately." Commonwealth v. Rollins, 354 Mass. 630, 638 (1968). See Rodriquez, supra at 100 (modified Tuey instruction may not be used prematurely); Jenkins, supra (Tuey-Rodriquez instruction should "never" be given prematurely); O'Brien, 65 Mass. App. Ct. at 296 ("instructions given to a jury that have not reached the point of deadlock may have an impermissibly coercive effect"). "A judge crosses the line between enlightening the jurors' understanding [of the law] and coercing them [into returning a verdict] when 'he overcomes the will by the weight of his authority.'" Commonwealth v. Diaz, 19 Mass. App. Ct. 29, 34 (1984), quoting from Horning v. District of Columbia, 254 U.S. 135, 139 (1920) (Brandeis, J., dissenting). We agree with the defendant that because the jury deliberations were not "due and thorough," the judge's instruction was "inappropriate." Carnes, supra at 829.

Moreover, the judge erroneously "digress[ed] from" the language of the approved Tuey-Rodriquez charge "with language

compelling the jury to reach a verdict," O'Brien, 65 Mass. App.
Ct. at 295, such as stating that the case would have to be
retried if they could not reach a verdict and the court was
booked until May, that the jurors should do "whatever voting or
whatever [they] need to do" if they saw a "ground swell of
support" in either direction, and that the court would take the
verdict if it was reached within the approximate twenty minutes
before the lunch break.  See Villafuerte, 72 Mass. App. Ct. 910,
quoting from O'Brien, 65 Mass. App. Ct. at 295 ("[A] judge may
not depart from the Tuey-Rodriquez charge with language
compelling the jury to reach a verdict by stating, for example,
that 'the case must at some time be decided'").  Judges are
advised not to stray from the express language of the Tuey-
Rodriquez charge, Commonwealth v. Sosnowski, 43 Mass. App. Ct.
367, 374 (1997); O'Brien, 65 Mass. App. Ct. at 295, and they
"must be particularly vigilant that there not creep into the[ir]
phraseology any suggestion that the jurors are obligated to
decide the case one way or another."  Ibid.  See Commonwealth v.
Brown, 367 Mass. 24, 31-32 (1975) (charge coercive where it
strayed from Tuey and referenced the "cost in terms of money and
effort and time that a case of this sort entails").  Here, the
judge also omitted "language requiring that the verdict to which
a juror agrees must be 'the result of his own convictions, and
not a mere acquiescence in the conclusion of his fellows,' and

that 'it is [the juror's] duty to decide the case, if [he] can conscientiously do so.'"  Id. at 32, quoting from Highland Foundry Co. v. New York, N.H. & H. R.R., 199 Mass. 403, 409 (1908).  The judge's instruction went beyond the Tuey-Rodriguez charge in "(1) inform[ing] the jury that the case must at some time be decided and (2) tend[ing] to induce those jurors tentatively in the minority to be persuaded by those in the majority."  Commonwealth v. Jones, 373 Mass. 423, 427-428 (1977).  We think that the judge's instruction "may [have led] jurors to believe that they should compromise their own conscientious convictions in order to reach a verdict," O'Brien, 65 Mass. App. Ct. at 296, and, in light of the fact that the jury returned a guilty verdict less than thirty minutes after returning from lunch, we agree that the instruction impermissibly "cast[s] the balance substantially more in favor of conviction."  Brown, supra at 32.

Accordingly, the judgment is reversed and the verdict is set aside.

So ordered.