NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-854

COMMONWEALTH

vs.

BRANDON M. BAMFORD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was found guilty of one count of indecent assault and battery on a child under the age of fourteen.  He was found not guilty of two additional counts of indecent assault and battery on a child under the age of fourteen and one count of rape of a child aggravated by age difference.  On appeal, the defendant argues that the judge erred in giving the Tuey-Rodriquez charge, see Commonwealth v. Rodriquez, 364 Mass. 87 (1973); Commonwealth v. Tuey, 8 Cush. 1 (1851), causing a substantial risk of a miscarriage of justice.  He also argues that certain statements in the Commonwealth's closing argument caused a substantial risk of a miscarriage of justice.  We affirm.

Background.  We summarize the facts as presented to the jury.  After sustaining a head injury, the victim's father was unable to help care for his children.  The victim's mother became the primary support for the household and turned to the defendant, the victim's uncle, to help with childcare.  The defendant would often watch the nine year old victim and her thirteen year old brother at his home where the children would spend the night.  The defendant sometimes had his own young daughter at home, but he had no roommates.  On multiple occasions, the defendant asked the victim to sleep in his bed.  While in bed together, the defendant touched the victim's vagina.  The defendant also placed the victim's hand on his penis two or three times.

The jury began deliberations in the late afternoon of the fourth day of trial.  On the morning of the second day of deliberations, the jury sent a note to the judge.  In this first note, the jury asked why there were two indictments under G. L. c. 265, § 13B, assault and battery on a child less than fourteen (hand on penis).  After consulting with both parties, the judge gave the jurors a written response, stating that the Commonwealth had charged the defendant with violating the statute twice by having the victim touch the defendant's penis.

2

A little over an hour later, the jury sent a second note, asking the judge, "What are the next steps if the jury cannot come to a unanimous verdict?"  The judge stated to the parties that because the jury had been deliberating for only a short amount of time and there was no indication they were at an impasse, he was inclined to respond that they should continue their deliberations.  There was no objection by either party.

At around 3 P.M., while the jury was still deliberating, the judge discussed with the parties their thoughts on a possible Tuey-Rodriquez charge, and again stated that he had not found that the jury were at an impasse yet.  The parties agreed to let the jury go home early and continue their deliberations in the morning.

The next morning, after about thirty-five minutes of deliberations, the jury sent a third note asking, "Is it allowable to have unanimous decisions on some but not all indictments?  Or can a jury be 'hung' on 1 of 4 indictments?"  While discussing with the parties, the judge stated that he wanted to respond to the jury's questions in the affirmative and that he did not think that a Tuey-Rodriquez charge was appropriate yet because the jury were asking questions and not stating they were at an impasse.  Neither party objected.  The

3

judge responded, "Yes," to both questions, and the jury continued their deliberations.

That afternoon, the jury sent a fourth note stating, "The jury has reached [a] unanimous verdict on 3 of the 4 indictments. On the other we are at a deadlock." The judge stated to the parties that at this point, the jury had "[b]een at it a long time. They['] ve asked a couple of questions early on that gave an indication that they were concerned about being deadlocked, although they didn't say it. This is where they said they're deadlocked." He went on to say that he intended to give them the Tuey-Rodriquez charge. Defense counsel stated, "That's wise," and the prosecutor agreed. The judge then gave the jury the Tuey-Rodriquez instruction and sent them back to deliberate. Forty-two minutes later, the jury returned with the verdicts, finding the defendant guilty of one count of indecent assault and battery on a child under the age of fourteen and not guilty of the three other charges.

Discussion. 1. General Laws c. 234A, § 68C, and Tuey-Rodriquez charge. For the first time on appeal, the defendant argues that the judge coerced the jury and violated G. L. c. 234A, § 68C, when he gave the Tuey-Rodriquez charge, ordering the jury to continue deliberating after they had twice reported being deadlocked. The defendant did not raise this claim at

4

trial, and in fact expressed agreement when the judge determined it was time to give the instruction.  As such, we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. Abdul-Alim, 91 Mass. App. Ct. 165, 171 (2017).

General Laws c. 234A, § 68C, prohibits a judge "from ordering further deliberations by a deadlocked jury that has twice reported being at an impasse after due and thorough deliberation, unless they explicitly consent or seek clarification on the law."  Read v. Commonwealth, 495 Mass. 312, 323, cert. denied, 145 S. Ct. 1964 (2025).  The statute safeguards jurors "from being coerced into reaching a verdict." Commonwealth v. Winbush, 14 Mass. App. Ct. 680, 682 (1982) (interpreting substantially identical precursor statute, G. L. c. 234, § 34).  Whether due and thorough deliberation has occurred, thus triggering the statute, "is a matter of discretion for the trial judge."  Veiga v. Schochet, 62 Mass. App. Ct. 440, 443 (2004).  Similarly, "[w]hether the jury are deadlocked, and whether the Tuey-Rodriquez charge should be given at a particular time, are matters that are addressed to the discretion of the trial judge."  Commonwealth v. O'Brien, 65 Mass. App. Ct. 291, 295 (2005).  We thus review these decisions for abuse of discretion.  See Commonwealth v. Jenkins, 416 Mass. 736, 740-741 (1994).

5

"Generally, where the judge apprehends that the jury are deadlocked, the Tuey-Rodriquez charge . . . may be given." O'Brien, 65 Mass. App. Ct. at 295. "When used appropriately and after the jury have engaged in due and thorough deliberation, the charge is an important tool 'designed to urge the jury to reach a verdict by giving more serious consideration to opposing points of view'" (citation omitted). Commonwealth v. Chalue, 486 Mass. 847, 860 (2021). Because the instruction has a "sting" to it, "it should not be used prematurely." O'Brien, supra.

On appeal, the defendant implies that the third note, in which the jury questioned whether it was "allowable to have unanimous decisions on some but not all of the indictments? Or can a jury be 'hung' on 1 of 4 indictments?" constituted a "return" for purposes of G. L. c. 234A, § 68C.[1] Thus, the defendant alleges, the fourth note, which stated, "The jury has

---

[1] The defendant also posits that the second note could have been a return. He argues that following the second note, in which the jury inquired about "next steps if [they] could not come to a unanimous verdict," the judge was "well aware that the note signaled a possible deadlock" and the judge's subsequent comments at the end of that day "implied that [he] realized that the communication could constitute[] a 'return' under the statute." We disagree. The judge explicitly found that the second note did not constitute an impasse (or a "return" under the statute). Given the length of deliberations at that point and the content of the note, we see no abuse of discretion in this finding. See Veiga, 62 Mass. App. Ct. at 444.

6

reached [a] unanimous verdict on 3 of the 4 indictments.  On the

other [indictment] we are at a deadlock," was a second return

under the statute.  Following the defendant's argument to its

logical conclusion, the judge failed to ask the jury for their

consent before sending them back out, and coerced them through

the Tuey-Rodriquez and violated the statute.  We disagree.

As the trial judge remarked while discussing the third note

with the parties, the jurors asked two questions that merited

responses.  The jury did not state that they were deadlocked.

Thus, as the judge explicitly found, a Tuey-Rodriquez charge was

not yet appropriate.[2]  See O'Brien, 65 Mass. App. Ct. at 296

("instructions given to a jury that have not reached the point

of deadlock may have an impermissibly coercive effect").  That

the judge did not interpret the third note to suggest that the

jury were at an impasse was not an abuse of discretion.  See

Veiga, 62 Mass. App. Ct. at 443-444 (no abuse of discretion in

failing to declare impasse where although notes sent by jury

used phrases with word "deadlock," context "suggested that the

_____

[2] We note that at this point it may have been practical,
although not required, to give the jury the alternate American
Bar Association instruction sometimes referred to as "Tuey-
Rodriquez light."  See Rodriquez, 364 Mass. at 101-102.  That
charge is "less emphatic than the [Tuey-Rodriquez] charge and is
intended for use either as part of the original instructions to
the jury or as a supplemental instruction when the jurors appear
to be running into difficulty reaching a verdict."  Id. at 101.

process of deliberating was ongoing rather than over"); Winbush, 14 Mass. App. Ct. at 683 (after receipt of ambiguous note, it was within judge's discretion to determine whether jury were deadlocked). Further, the judge properly responded to the jury's questions that they could indeed return partial verdicts.

The fourth note, in which the jurors declared that they were "at a deadlock," was the first return for purposes of G. L. c. 234A, § 68C. Following receipt of that note, the judge found that the jury had "[b]een at it a long time." He then told the parties that he believed it was time to give the Tuey-Rodriquez instruction, implicitly finding that "due and thorough deliberation" had taken place.[3] See Jenkins, 416 Mass. at 738 ("the giving of a [Tuey-]Rodriquez charge on the first return of the jury [suggesting impasse] . . . implied that the judge had concluded that the jury's deliberations were due and thorough" [quotation and citation omitted]). We see no abuse of discretion in such a finding. Because this was the first time the judge found that there had been due and thorough deliberations, he was not required to ask for the jury's consent to continue deliberating under G. L. c. 234A, § 68C. See Commonwealth v. Keane, 41 Mass. App. Ct. 656, 659 (1996)

---

[3] When the judge concluded it was time to give the Tuey-Rodriquez instruction, the jurors had been deliberating for more than eleven hours.

8

(because judge did not determine that deliberations had been due and thorough until second report of deadlock, judge did not err in sending jury out to deliberate further without their consent).

The defendant's suggestion that in making this determination, the judge "appeared to avoid" engaging in the appropriate evaluation is not supported by the record. Following the second note, the first indication that the jurors may be struggling, the judge made an explicit finding that he did not believe the question about "next steps" suggested an impasse and noted the short amount of time the jury had spent deliberating at that point. At the end of that day, he addressed with the parties the possibility of a future Tuey-Rodriquez charge and reiterated that he was not yet finding an impasse based on the length of deliberations. See Abdul-Alim, 91 Mass. App. Ct. at 171-172 (determination of due and thorough deliberation "requires evaluation of the complexity of the case, the extent of evidentiary conflict on material issues, and the total length of time the jury [have] spent attempting to resolve those conflicts" [quotation and citation omitted]). The record also reflects the judge's thorough discussions with the parties after each subsequent note. It is thus clear that from early on in the deliberations, the judge was cognizant of his duties

9

under G. L. c. 234A, § 68C, to determine whether the content of the notes suggested an impasse and to evaluate the case together with the length of time the jury had deliberated to determine whether those deliberations were due and thorough.

As noted, the defendant did not object to the judge's course of action at any point and in fact explicitly agreed with his responses to all of the jury's notes as well as the timing of the Tuey-Rodriquez charge. "[S]uch an omission indicates that the potential for coercion argued now was not apparent to one on the spot." Lowenfield v. Phelps, 484 U.S. 231, 240 (1988). Further, that the jury returned a verdict forty-two minutes after the instruction does not show coercion. See Jenkins, 416 Mass. at 740 (that jury returned fifteen minutes after Tuey-Rodriquez instruction with guilty verdict "does not point to coercion").

Even were we to find error in the timing of the charge, "[w]here, as here, the judge 'urges further deliberation in an effort to agree upon a verdict, and in doing so [his] comments are balanced and not slanted toward conviction, we are unable to perceive harm to the defendant'" (citation omitted). Abdul-Alim, 91 Mass. App. Ct. at 173. Accordingly, we discern no risk of a substantial risk of a miscarriage of justice.

10

2.  Closing argument.  The defendant argues that the prosecutor's comments regarding the defendant's "opportunity" to assault the victim as well as a remark personally vouching for the witnesses' credibility and the defendant's guilt were improper.  As there was no objection at trial, we review any error for a substantial risk of a miscarriage of justice.  See Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011).

The defendant first challenges the prosecutor's remarks suggesting that the defendant had the "opportunity" to sexually assault the victim.[4]  He claims these remarks amounted to improper burden shifting requiring that he show he did not "avail himself" of such an opportunity, and that the remarks improperly suggested guilt "based on mere presence or ability." We do not agree with the defendant's analysis of these comments,

---

[4] The prosecutor used the word "opportunity" four times in her closing:

> "This is a case of opportunity.  The [d]efendant was a grown 29-year-old man [who] saw a nine-year-old vulnerable girl in a situation that was very, very difficult. . . .

> "The opportunity was there.  He saw that this child came from a troubled home.  He brought her to his home -- and remember, at the time he was living at a home where there were no other adults present. . .

> "This is the case of opportunity.  The [d]efendant took an opportunity where he saw a child that nobody else was really watching over.  And he used this vulnerable child and molested her."

11

"which we review 'in light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.'" Commonwealth v. Johnson, 463 Mass. 95, 111 (2012), quoting Commonwealth v. Rodriguez, 437 Mass. 554, 565 (2002).

There was evidence presented at trial about the victim's difficult home life and how her mother had sought help from the defendant. The defendant frequently watched the victim overnight at his home where no other adults lived. The prosecutor reiterated this evidence and also the victim's testimony that the defendant was her uncle, a trusted person with whom she spent a lot of time. With respect to the statements that this was a case of "opportunity," we do not see this as the prosecutor suggesting that the defendant's "mere presence or ability" meant he was guilty. This was not a situation where the identity of the perpetrator was at issue and the defendant's presence at the scene was used to imply guilt. Contrast Commonwealth v. Jones, 477 Mass. 307, 317 (2017) (Commonwealth properly relied on evidence of defendant's presence at scene to prove identity). Rather, the prosecutor framed the defendant's motive as taking advantage of an opportunity that was presented to him -- an opportunity whereby he, a trusted adult, was able to exploit a vulnerable young girl with few to no witnesses around. This did not constitute

12

improper burden shifting.  Contrast Commonwealth v. Amirault, 404 Mass. 221, 240 (1989) (prosecutor's closing argument improper where he claimed defendant "was unable to point to one single thing in the whole world that would account for why all these children and parents have turned against him").  Rather, the prosecutor was permitted to, and did, "argue forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence" (quotation and citation omitted).  Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018).

Further, the judge instructed the jury, both in his precharge and final charge to the jury, on the Commonwealth's burden of proof, telling them that the defendant had no obligation to prove anything, and that closing arguments were not evidence.  See Commonwealth v. Gonzalez, 465 Mass. 672, 681 (2013) (jury are presumed to follow instructions).  Accordingly, there was no error in the prosecutor's statements regarding the defendant's "opportunity."

The defendant next challenges the prosecutor's following statement made during closing argument as improper personal vouching.

> "I would ask when you go to deliberate that you consider the testimony that you heard from the Commonwealth's witnesses, and I would suggest that once you've done that you will come to the same conclusion that I have, that the Defendant is guilty of all indictments against him."

Improper vouching occurs when an attorney expresses a personal opinion regarding the credibility of a witness or suggests they have knowledge independent of the evidence before the jury.  See Commonwealth v. Muller, 477 Mass. 415, 433 (2017).  As the Commonwealth essentially conceded at oral argument, this statement constituted improper vouching.

Viewed in its entirety, however, the improper statement did not result in a substantial risk of a miscarriage of justice.  The remark specifically invited the jury to "consider the testimony that you heard from the Commonwealth's witnesses."  The prosecutor did not suggest that her opinion was based on knowledge independent of the evidence before the jury.  Contrast Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016) (substantial risk of miscarriage of justice where prosecutor implied in closing that there were "additional witnesses corroborating the complainant's testimony beyond what was legitimately in evidence").  Further, "[t]he jury are presumed to understand that a prosecutor is an advocate, and statements that are [e]nthusiastic rhetoric, strong advocacy, and excusable hyperbole will not require reversal" (quotation and citation omitted).  Commonwealth v. Sanchez, 96 Mass. App. Ct. 1, 10 (2019).

14

In the context of an otherwise proper closing where the jury were instructed that arguments are not evidence, we do not see that the misstatement could have made a difference in the jury's conclusion.  This is especially so where the defendant was acquitted of three of the four charges against him.  See Commonwealth v. Santana, 101 Mass. App. Ct. 690, 695 (2022) (where case "boiled down to a determination of credibility . . . the split verdict indicates that the jurors were able to impartially assess the credibility of the witnesses").  Accordingly, the improper statement did not create a substantial risk of a miscarriage of justice.

Judgment affirmed.

By the Court (Hershfang, Hodgens & Smyth, JJ.[5]),

Clerk

Entered:  April 2, 2026.

---

[5] The panelists are listed in order of seniority.

15