## OLDEST THAMES *vs.* COMMONWEALTH.

Suffolk,    April 2, 1974. — June 12, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Constitutional Law*, Double jeopardy. *Practice, Criminal*, Double jeopardy, Mistrial. *Jury and Jurors.*

There was no abuse of discretion on the part of a trial judge in declaring a mistrial of indictments following four and one-half hours deliberation by the jury, during which time they had sent him two messages indicating an inability to agree, and after the judge had received in substance a negative answer to his final question whether there was a "reasonable hope of securing an agreement"; further prosecution on the indictments was not barred by double jeopardy principles. [478-481]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on September 26, 1973.

The case was heard by *Reardon, J.*

*Malvine Nathanson* for the petitioner.

*Paul V. Buckley*, Assistant District Attorney (*Alvan Brody*, Assistant District Attorney, with him) for the Commonwealth.

WILKINS, J.    The petitioner argues exceptions to the dismissal by a single justice of his petition for extraordinary relief under G. L. c. 211, § 3.[1] The petitioner contends that indictments charging him with rape and robbery should be dismissed because prosecution of those indictments would constitute double jeopardy in violation of the common law of this Commonwealth and of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.

---

[1] The Commonwealth argues the merits of the petition without objecting to the form of the remedy sought. See *Gilday* v. *Commonwealth,* 360 Mass. 170, 171 (1971).

The petitioner was tried before a jury on these indictments on November 28 and 29, 1972. At 11:15 A.M. on the latter day the jury retired for deliberations. During the next four and one-half hours the jury sent two messages to the judge. It does not appear precisely what those messages were, whether they were in writing or how they were delivered. Counsel were not advised of the existence or the content of either communication. About 3:50 P.M. the jury returned to the court room. After the foreman indicated that the jury had not agreed on verdicts, the following colloquy took place: THE JUDGE: "I have had two messages as to your inability to agree, Mr. Foreman. Is there any reasonable hope of securing an agreement?" THE FOREMAN: "There is one person on the jury who thinks there is . . .." THE JUDGE: "I don't want to know how you stand. If I send you out again to deliberate, do you think ——" THE FOREMAN: "Not enough evidence." THE JUDGE: "Very well. I will declare a mistrial."

An exception was taken to the judge's declaration of a mistrial. Subsequently a motion to dismiss the indictments on double jeopardy grounds was filed, referred to the trial judge and denied after hearing. Shortly thereafter this petition for extraordinary relief was entered, argued by counsel and dismissed.[2]

Several principles of law are not in serious dispute. The Double Jeopardy Clause of the Fifth Amendment is appli-

---

[2] The bill of exceptions does not set forth the proceedings before the Superior Court judge on the petitioner's motion to dismiss the indictments on double jeopardy grounds. The Commonwealth, representing that a transcript of the hearing before the Superior Court judge was not available to it prior to the hearing before the single justice, has furnished us a copy of certain pages of that transcript but has not moved to add those pages to the record before us. We therefore do not rely on circumstances shown solely on those pages.

Because of the standard which is applicable to the resolution of the issues raised by the petition, we think that a judge's statement of his reasons for declaring a mistrial may be of importance and that, where such a statement exists and a double jeopardy argument is advanced, the judge's statement of reasons should be included in the record.

The circumstances of this case indicate that, where possible, any messages or questions from the jury to the judge should be in writing; that they should be shown to counsel and immediately placed on record; and that any reply thereto by the judge to the jury should also be placed on record in the presence of counsel, if available.

cable to the States through the Fourteenth Amendment to the Constitution of the United States. *Benton* v. *Maryland*, 395 U. S. 784, 794 (1969). This Commonwealth has long had a common law rule against placing a defendant twice in jeopardy. See *Commonwealth* v. *Bowden*, 9 Mass. 494 (1813); *Commonwealth* v. *Purchase*, 2 Pick. 521, 522 (1824); *Commonwealth* v. *Roby*, 12 Pick. 496, 501 (1832). Double jeopardy concepts do not bar second trials in all instances. See *Commonwealth* v. *McCormick*, 130 Mass. 61, 62 (1881). A traditional example of a second trial which is not interdicted by double jeopardy principles is one which follows a trial where the jury were discharged because they were unable to come to an agreement. See *Commonwealth* v. *Cody*, 165 Mass. 133, 136 (1896), and cases cited; *United States* v. *Perez*, 9 Wheat. 579 (1824); *Downum* v. *United States*, 372 U. S. 734, 736 (1963); *United States* v. *Castellanos*, 478 F. 2d 749, 751 (2d Cir. 1973). A decision of a judge to declare a mistrial will not bar a subsequent prosecution on the same indictment unless, because there was no "manifest necessity" for it (*United States* v. *Perez*, 9 Wheat., *supra*, at 580), his action constituted an abuse of discretion. *Commonwealth* v. *Cronin*, 257 Mass. 535, 537 (1926). *United States* v. *Jorn*, 400 U. S. 470, 485-486 (1971).[3] The question for decision, as it was before the single justice, is whether the petitioner has shown an abuse of discretion by the trial judge in declaring a mistrial. Each case of this type depends, of course, on the particular facts. See *Illinois* v. *Somerville*, 410 U. S. 458 (1973).

The petitioner argues that the judge acted precipitously before it was reasonably clear that the jury could not arrive

---

[3] The *Jorn* opinion was a plurality opinion of four Justices. Two Justices joined in the judgment on procedural grounds. *United States* v. *Jorn*, *supra*, at 488. Three dissenting Justices, following what they regarded as the standard applied in *Gori* v. *United States*, 367 U. S. 364 (1961), rejected a strict abuse of discretion standard. *United States* v. *Jorn*, *supra*, at 488-489. These Justices preferred an analysis of the trial judge's action to see if in the circumstances the defendant was prejudiced by the dismissal of the jury. In deciding this case on the Fifth Amendment double jeopardy issue, we have followed the standard of the plurality opinion in the *Jorn* case. If proof of prejudice to the petitioner were required here, the petitioner would be hard put to establish it on this record.

at verdicts. He points out that the jury never explicitly stated that they were unable to reach verdicts and that they had only deliberated for just over four and one-half hours when the mistrial was declared.

We believe, however, that the judge acted in the reasonable exercise of his discretion. The record shows that he had already received two messages that the jury were unable to agree. Unlike the judge in the *Jorn* case, he made an effort to exercise a sound discretion on the crucial question whether there was a "reasonable hope of securing an agreement." In response to the judge's question on this subject, the foreman gave an answer which, while it was not directly responsive, showed that one juror thought there was not enough evidence and that the jury had a disposition of eleven to one toward conviction. The judge acted reasonably in the circumstances in not pressing for further deliberations. Knowing what he did about the state of the jury's vote, it is doubtful that he was in a position where he could have fairly expedited any further deliberations by giving a charge such as this court approved for use in proper circumstances in *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 100-101 (1973). Clearly the judge was satisfied that he had received an answer to his question when he stated, "Very well. I will declare a mistrial." On this record a conclusion that the jury had indicated that they were not likely to reach a verdict within a reasonable time was warranted, and it was not an abuse of discretion to declare a mistrial. See *Grogan* v. *United States*, 394 F. 2d 287, 289-290 (5th Cir. 1967), cert. den. 393 U. S. 830 (1968); *United States* v. *Brahm*, 459 F. 2d 546, 550 (3d Cir. 1972), cert. den. sub nom. *Medina* v. *United States*, 409 U. S. 873 (1972); *United States* v. *Goldstein*, 479 F. 2d 1061, 1069 (2d Cir. 1973), cert. den. 414 U. S. 873 (1973).[4] Consequently,

---

[4] This case is unlike *United States* v. *Lansdown*, 460 F. 2d 164, 166-168 (4th Cir. 1972), relied on by the petitioner, where the judge discharged a jury whose foreman stated that the jury were on the verge of a verdict. Nor is it like *United States ex rel. Russo* v. *Superior Court of N. J. Law Div. Passaic County*, 483 F. 2d 7 (3d Cir. 1973), cert. den. sub nom. *New Jersey Superior Court* v. *Russo*, 414 U. S. 1023, where the judge declared a mistrial solely on his assessment that the jurors were weary, without any questioning of the jury as to their progress toward a verdict.

further prosecution of the petitioner is not barred, and the single justice rightly dismissed the petition.

*Exceptions overruled.*