JOSE FUENTES *vs.* COMMONWEALTH. March 23, 2007. *Jury and Jurors. Practice, Criminal,* Double jeopardy, Mistrial Deliberation of jury.

Jose Fuentes appeals from a judgment of a single justice of this court denying his petition for relief under G. L. c. 211, § 3. We affirm the judgment.

Fuentes was indicted on charges of unlawful distribution of heroin, second or subsequent offense, and of unlawful distribution of heroin in a school zone. A jury trial commenced in the Superior Court. On the second day of deliberations, the jury requested and received reinstruction on reasonable doubt and direct and circumstantial evidence. After deliberations resumed, the foreperson of the jury sent a note to the trial judge, asking, "At what point is a jury hung?" At the request of the Commonwealth and with Fuentes's assent, the judge charged the jury in accordance with *Commonwealth* v. *Tuey,* 8 Cush. 1,

---

2-3 (1851), and *Commonwealth* v. *Rodriquez*, 364 Mass. 87 (1973) (*Tuey-Rodriquez* charge). The jury resumed deliberating, and shortly thereafter, the foreperson returned another note. The jury were returned to the court room, along with the prosecutor and defense counsel. Defense counsel, at this point, had not been informed of the contents of the note. Addressing the jury, the judge stated that she had received the note, which stated that the jury could not reach a unanimous verdict as to either indictment. The judge thereupon stated that she declared a hung jury and a mistrial. She did not consider any alternatives to declaring a mistrial (other than to say that she had no other choice), and she did not give defense counsel an opportunity to be heard before doing so. After the jury were dismissed, defense counsel lodged an objection to the mistrial, suggesting that under G. L. c. 234, § 34, the jury should have been told that they could continue deliberating if they wanted. After hearing that objection, and giving the prosecutor an opportunity to be heard, the judge recessed the case. Two days later, Fuentes moved to dismiss the indictments on the ground that retrial would violate the constitutional and common-law prohibition against double jeopardy. The judge denied the motion. Fuentes's G. L. c. 211, § 3, petition followed.

We review the single justice's judgment for abuse of discretion or other error of law. Where the evidence is sufficient to warrant a conviction (and Fuentes does not suggest that it was not), double jeopardy principles do not bar retrial if there was a "manifest necessity" for the declaration of a mistrial. *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974). "The question for decision, as it was before the single justice, is whether the petitioner has shown an abuse of discretion by the trial judge in declaring a mistrial."[1] *Id.* "The 'prototypical example' of a manifest necessity for a judge to declare a mistrial is a deadlocked jury." *Commonwealth* v. *Ellis*, 432 Mass. 746, 751 (2000), quoting *Commonwealth* v. *Andrews*, 403 Mass. 441, 448-449 (1988). We accord "great deference to the trial judge's determination" when a mistrial is "premised upon the trial judge's belief that the jury is unable to reach a verdict." *Commonwealth* v. *Cassidy*, 410 Mass. 174, 178 (1991), quoting *Arizona* v. *Washington*, 434 U.S. 497, 509 (1978).

Fuentes argues that despite the apparent deadlock, there was no manifest necessity for the mistrial because the judge neither asked the foreperson in open court whether there was any reasonable probability of unanimous verdicts nor asked if the jury would consent to further deliberations. G. L. c. 234, § 34. Nothing in our case law or in § 34 required the judge to make either inquiry as a matter of course, and the circumstances before the judge did not necessitate either inquiry. The final note from the foreperson unequivocally stated that the jury were "unable to come to a unanimous decision," in other words, that the jury were deadlocked. The note did not suggest, for example, that the jury were merely having trouble making a decision or needed further

---

[1] The judge stated that she had "no choice . . . but to declare a hung jury." Fuentes argues that the judge believed that she lacked any discretion, and so her declaration of a mistrial was based on an error of law. It is at least as likely, however, that the judge meant that in her view, there was a manifest necessity for the mistrial. See *Commonwealth* v. *Knight*, 392 Mass. 192, 195 (1984) ("the record can support a conclusion that the judge knew he had discretion and exercised it").

instructions from the judge. Moreover, the judge had already given the *Tuey-Rodriquez* instruction, after the jury had asked at what point they would be considered hung.[2] The jury deliberated for a total of about seven hours, although the evidence at trial lasted only about one day and raised no complex issues, and had conscientiously asked for reinstruction on certain points of law. There is no doubt that deliberations up to that point had been "due and thorough." G. L. c. 234, § 34. In these circumstances, the judge could properly conclude that there was no reasonable prospect of unanimity. We see no need for the foreperson to say so in open court. By the same token, the judge did not abuse her discretion in declining to ask whether the jury would consent to deliberating further.

Fuentes also argues that he was not given an opportunity to be heard before the judge declared the mistrial. Although, as the single justice stated, the more prudent course would have been to consult with counsel, see *Commonwealth v. Floyd P.*, 415 Mass. 826, 833-834 (1993), the record does not show that such consultation would have produced any fruitful alternatives. As noted, there was no reasonable probability that the jury would have consented to deliberate further, and without such consent, they could not have been compelled to do so. G. L. c. 234, § 34. There was no abuse of discretion by either the trial judge or the single justice.

*Judgment affirmed.*

*Benjamin H. Keehn*, Committee for Public Counsel Services (*Jason D. Thomas*, Committee for Public Counsel Services, with him) for the plaintiff.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

---

[2]That question itself might have suggested to the judge that the jury did not believe they would be able to resolve their impasse and were disinclined to keep trying.

