# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

### MICHAEL RAY vs. COMMONWEALTH.

Suffolk. April 2, 2012. - July 24, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Double jeopardy, Jury. *Practice, Criminal,* Double jeopardy, Mistrial, Jury and jurors, Deliberation of jury. *Jury and Jurors.*

In proceedings following a mistrial before the same Superior Court judge, the judge did not err in denying the defendant's motion to dismiss the indictments on double jeopardy grounds, where, in the circumstances, there was no basis to conclude that the judge abused his discretion in determining, at the first trial, that the jury were deadlocked and that declaration of a mistrial was justified by manifest necessity. [3-7]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 16, 2012.

The case was reported by *Gants,* J.

*Anne Rousseve*, Committee for Public Counsel Services, for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

LENK, J. Michael Ray (defendant) was tried before a jury in the Superior Court. After the jury indicated that they were unable to reach a verdict, the judge declared a mistrial. Prior to retrial, the defendant filed a motion to dismiss the indictments against him on double jeopardy grounds. The trial judge (the same judge as at his first trial) denied that motion, finding that the prior declaration of mistrial was justified by manifest necessity. The defendant sought interlocutory relief before a single justice in the county court. See G. L. c. 211, § 3. The single justice reserved and reported the case to the full court. We conclude that the petition is to be denied.

1. *Background.* We recite briefly the background facts as set forth in defense counsel's affidavit, the accuracy of which is uncontested.[1]

The defendant stands indicted on two charges of deriving support from prostitution. See G. L. c. 272, § 7. The defendant's trial began on February 1, 2012, at about 2:30 P.M., and the Commonwealth began presenting its case the next day. The case was submitted to the jury at 3 P.M. the following day, a Friday. The jury deliberated for approximately one hour and fifteen minutes, and reconvened the following Monday for another four and one-half hours of deliberation. During these deliberations, the jury submitted two notes to the judge with a total of four written questions.[2] At about 2 P.M. on Monday, the jury submitted a third note, declaring that, "even after very careful consideration of all of the evidence presented," they were "hopelessly deadlocked."

After reviewing this note, the judge indicated that he was

---

[1]The parties did not submit a transcript of the relevant proceedings as part of the record on appeal.

[2]These questions involved (1) whether a police officer's failure to "follow [specified] rules and procedures" should "be a factor in our deliberations"; (2) the definition of the term "seized funds"; (3) whether "negotiating in and of itself constitute[s] deriving support from the earnings of a prostitute"; and (4) whether, if the alleged prostitutes "did not receive earnings," they could nonetheless be "considered to be engaged in the act of prostitution."

inclined to declare a mistrial. Both the prosecutor and defense counsel requested that the court give the jury a *Tuey-Rodriquez* instruction.[3] The judge declined to give this instruction and declared a mistrial over the defendant's objection.

Subsequently, the defendant filed a motion to dismiss the indictments against him on double jeopardy grounds. The same judge denied the defendant's motion, stating that the prior declaration of mistrial had been a matter of manifest necessity. In denying the defendant's motion to dismiss, the judge noted the length of the jury's deliberations relative to the duration of the trial as a whole and referenced also the jury's "strongly worded" note. He explained that, in light of these factors, he had feared that providing the jury a *Tuey-Rodriquez* charge instead of declaring a mistrial "would [have] entail[ed] a serious risk of jury coercion."

2. *Discussion.* State and Federal double jeopardy protections bar, "as a general rule," retrial of a defendant whose initial trial ends over his objection and without a conviction. *Arizona* v. *Washington*, 434 U.S. 497, 505 (1978). See *Commonwealth* v. *Steward*, 396 Mass. 76, 78-79 (1985). However, an exception to the general rule applies where a mistrial is declared as a matter of "manifest necessity." *Id.* at 78, quoting *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). A frequent and "traditional example" of manifest necessity is "where the jury were discharged because they were unable to come to an agreement" on a verdict. *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974), and cases cited. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 448-449 (1988), quoting *Oregon* v. *Kennedy*, 456 U.S. 667, 672 (1982) (describing "hung jury" as "prototypical example" of manifest necessity). The trial judge's belief that the jury is unable to reach a verdict "has long been considered the 'classic basis' for a proper mistrial." *Blueford* v. *Arkansas*,

---

[3]The *Tuey-Rodriquez* instruction is intended to remind the jury that "it is desirable that the case be decided" and that "it is [their] duty to decide this case if [they] can do so conscientiously." Instruction 2.460 of the Criminal Model Jury Instructions for Use in the District Court (2009). See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix). The purpose of the instruction is to encourage a purportedly deadlocked jury to consider seriously and with an open mind the views and arguments of each member. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 3-4 (1851).

132 S. Ct. 2044, 2047 (2012), quoting *Arizona* v. *Washington*, 434 U.S. 497, 509 (1978).

In such a case, "[t]he question for decision . . . is whether the petitioner has shown an abuse of discretion by the trial judge in declaring a mistrial." *Thames* v. *Commonwealth*, *supra.* To resolve that question, we rely on "[t]wo principles . . . for guidance: (1) counsel must [have been] given full opportunity to be heard and (2) the trial judge must [have given] careful consideration to alternatives to a mistrial." *Commonwealth* v. *Nicoll*, 452 Mass. 816, 818 (2008), quoting *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985). Where the trial judge adhered to these principles, and absent any claim that the evidence at trial was not legally sufficient to support a conviction, "double jeopardy will not prevent retrial after a mistrial is declared because of the jury's inability to reach a unanimous decision." *Ferrari* v. *Commonwealth*, 448 Mass. 163, 167 (2007), citing *Thames* v. *Commonwealth*, *supra.*

Defense counsel's affidavit states that both parties requested that the judge give a *Tuey-Rodriquez* instruction, permitting the inference that both parties were provided an opportunity to be heard on possible alternatives to a mistrial. As the defendant emphasizes, however, the judge "indicated that [he] was inclined to declare a mistrial" prior to hearing from the parties. While it would have been preferable for the judge to refrain from expressing an opinion on the need for a mistrial until he heard from counsel, the fact that the judge "indicated" an "inclin[ation]" to declare a mistrial does not support an inference that the judge had closed his mind to other alternatives, or that the subsequent hearing was a mere formality. See *Commonwealth* v. *Cassidy*, 29 Mass. App. Ct. 651, 655 (1990), *S.C.*, 410 Mass. 174 (1991) ("the trial judge gave counsel a full opportunity to be heard, although he indicated a predisposition to a mistrial").

Nor does the record permit an inference that the judge failed to give careful consideration to the alternatives to a mistrial. The question whether a mistrial is appropriate in the circumstances of a given case is not answered by application of a "mechanical formula." *Illinois* v. *Somerville*, 410 U.S. 458, 462 (1973). Nonetheless, among the often pertinent factors are "statements by the jury that [they] cannot agree," and the length of

time the jury has spent in deliberations in light of the length of the trial as a whole and the complexity of the factual disputes raised. *United States* v. *Razmilovic*, 507 F.3d 130, 137-138 (2d Cir. 2007). See *Arnold* v. *McCarthy*, 566 F.2d 1377, 1387 (9th Cir. 1978). See also *Commonwealth* v. *Semedo*, 456 Mass. 1, 19 (2010), quoting G. L. c. 234, § 34 (judges to consider similar factors in determining whether jury deliberations have been "due and thorough").

The parties have provided no indication of the complexity of the factual disputes involved in this case. However, the jury's note was unambiguous concerning their inability to reach agreement: it stated specifically that "even after very careful consideration of all of the evidence presented," the jury were "in fact hopelessly deadlocked." Contrast *Commonwealth* v. *Jenkins*, 416 Mass. 736, 739 (1994) (judge properly refused to grant mistrial where note "did not state that the jury were hopelessly deadlocked").

Further, the evidentiary portion of the trial was short, lasting about one day in total. At the time the jury submitted their final note to the judge, they had deliberated for almost as long as it had taken the parties to present evidence.[4] In that respect, the present case closely resembles those where we have deferred to the trial judge's decision to declare a mistrial. See *Fuentes* v. *Commonwealth*, 448 Mass. 1017, 1019 (2007) (trial lasting less than two days followed by seven hours of deliberation); *Thames* v. *Commonwealth*, *supra* at 478, 480 (one-day trial followed by four and one-half hours of deliberation). See also *Plummer* v. *Rothwax*, 63 N.Y.2d 243, 251-252 (1984), and cases cited (collecting multiple cases involving hung juries after short trials).

The defendant emphasizes that, despite the joint request of the parties, the judge did not provide the jurors with a *Tuey-Rodriquez* instruction prior to declaring a mistrial.[5] We have previously described the provision of the *Tuey-Rodriquez* charge

---

[4]We note also that all indications are that the jury had been conscientious in their deliberations. The two prior notes submitted by the jury, described in note 2, *supra*, are suggestive of their engagement with the evidence and the case.

[5]The defendant emphasizes also that the judge failed to poll the jury on whether further instructions or deliberation would be likely to resolve the deadlock. While several Federal appellate courts strongly encourage trial

as the "orthodox approach" to dealing with a deadlocked jury. See *Commonwealth* v. *Connor*, 392 Mass. 838, 846 n.5 (1984). Indeed, providing the instruction is ordinarily the preferable course. Cf. *United States* v. *Razmilovic*, *supra* at 138 (considering "what actions, if any, the trial judge took prior to declaring a mistrial to help [him] determine whether the jury [were] genuinely deadlocked").

Nevertheless, nothing in our cases renders the provision of the *Tuey-Rodriquez* charge mandatory, even on request of the parties. Cf. *Commonwealth* v. *Rollins*, 354 Mass. 630, 638 (1968) (judge "may" provide the instruction to assist jury). See also *Blueford* v. *Arkansas*, 132 S. Ct. 2044, 2052 (2012) ("We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse"). In *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 100 (1973), itself, we recognized that the *Tuey-Rodriquez* charge has a "sting" and can, if improperly phrased or improvidently given, risk "coercion" of the jury to reach a verdict with which they are not fully comfortable. We cautioned, therefore, that the charge should not be given "without evident cause." *Id.*

The trial judge, "unlike us," interacts directly with the jurors while presiding at the trial. *Commonwealth* v. *Torres*, 453 Mass. 722, 737 (2009). As a result, the judge is ordinarily in the best position to determine whether such cause exists, or whether provision of the charge poses a risk of coercion. See *id.* The decision whether to provide the *Tuey-Rodriquez* charge is therefore committed to the sound discretion of the trial judge.

As discussed above, in light of the circumstances of this case, we discern no basis to conclude that the judge abused his discretion in determining that the jury were deadlocked and that declar-

judges to inquire separately of the foreperson and the jury as a whole whether further deliberations would be futile prior to declaring a mistrial, see, e.g., *United States* v. *Razmilovic*, 507 F.3d 130, 139 (2d Cir. 2007), and cases cited, this procedure does not reflect the prevailing practice in our courts. Nor is it a practice that we encourage; indeed, we have cautioned strongly against the risk of coercion inherent in questioning jurors, particularly in individual colloquies. *Commonwealth* v. *Connor*, 392 Mass. 838, 843-844 (1984). Cf. *United States* v. *Razmilovic*, *supra* at 138, 140 n.3; *United States* v. *Byrski*, 854 F.2d 955, 962 (7th Cir. 1988). Contrast *United States* v. *Hernandez-Guardado*, 228 F.3d 1017, 1029 (9th Cir. 2000).

ation of a mistrial was justified by manifest necessity. The defendant may be retried.

The case is remanded to the county court where the single justice shall enter a judgment denying the petition.

*So ordered.*