SUPREME JUDICIAL COURT 
 
 NICHOLAS SICELLON vs. COMMONWEALTH / JERION MOORE vs. COMMONWEALTH

 
 Docket:
 SJC-13478 / SJC-13479
 
 
 Dates:
 February 5, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Supreme Judicial Court, Superintendence of inferior courts. Practice, Criminal, Mistrial, Double jeopardy, Deliberation of jury. Jury and Jurors. Homicide. Firearms. Evidence, Identity
 
 

             The defendants, Nicholas Sicellon and Jerion Moore, appeal from the decision of a single justice of this court denying their petitions for extraordinary relief pursuant to G. L. c. 211, § 3, whereby the defendants challenged the denial of their motions to dismiss criminal charges.[1]  In their motions, the defendants argued that a third trial would impermissibly violate their protections against double jeopardy.  Before this court, the defendants argue that during their second trial, the trial judge declared a mistrial in the absence of manifest necessity and, further, that the evidence presented at the second trial did not suffice to identify the defendants as the perpetrators.  We conclude, however, that after a second and unequivocal statement that jurors were deadlocked, the trial judge properly exercised her discretion in declining to ask whether they consented to further deliberations.  Further, we conclude that the evidence sufficed to establish the defendants as the perpetrators.  We therefore affirm the judgments of the single justice denying relief.
            Prior proceedings.  Sicellon and Moore were each indicted for murder in the first degree in violation of G. L. c. 265, § 1, and for unlicensed possession of a firearm in violation of G. L. c. 269, § 10 (a).[2]  Tried together as codefendants, their first trial began in December 2021 but ended in a mistrial when the jury could not reach a verdict. In July 2022, their second trial began.  The jurors began deliberations on July 29, 2022, and a few days later, on August 2, they reported by way of a note that they could not reach a unanimous verdict.  The note stated:
"We cannot reach a unanimous decision[.]  Can you provide some guidance on how to proceed?  (We have done multiple votes & we have done a final vote)"
The jurors were dismissed for the remainder of the afternoon, and the next morning, the trial judge issued a Tuey-Rodriquez instruction.[3]  
            Deliberations resumed until the afternoon of August 4, 2022, when jurors reported again that they were unable to reach a verdict.  This was communicated by a note, which stated in substantive part:
"After careful deliberation we, the jury, are not able to reach a unanimous decision.  We the jury are deadlocked in our decision and after careful consideration and further discussion, will not change this decision."  
            At this point, the trial judge said that she had "no alternative but to declare a mistrial."  Counsel for Sicellon asked to be heard, and he specifically argued that G. L. c. 234A, § 68C,[4] allowed the trial judge to ask the jurors whether they consented to further deliberations.  He requested that the trial judge make that inquiry.  Counsel for Moore joined in this request.  The trial judge reviewed the cited statute and certain case law interpreting it.  She concluded, "I know that the statute permits it," but she explained that in practice, there is an "enormous concern" regarding "coercive effect."  While suggesting that it might not be "permitted practice," she nevertheless concluded:
"And certainly it's not a recommended practice for that reason.  And again, in looking at the totality of these circumstances, and the length . . . of the deliberations so far, and the questions that we have had, which have been cogent and pertinent questions, and the forcefulness with which they have reported their inability to reach a verdict now twice, I am very hesitant to ask them.  So just a minute.  Let me see if there's anything that gives me the authority to do so. . . .  I don't think there's much interpretation of the note they have just given me.  They are clear and quite strong in what they've told me. . . .  So I will tell you, gentlemen, as much as I would really like to send them back to continue deliberations, given the wording of the note, both notes, I don't think I've got the ability to do that in this case."  
The defendants objected.  The trial judge declared a mistrial, telling the jury, "I have no discretion, option, or choice, other than to declare a mistrial in this case."
            Sicellon filed two motions to dismiss on double jeopardy grounds.  The first argued that the trial judge erred in declaring a mistrial without manifest necessity, and the second argued the insufficiency of the evidence.  Moore filed a motion to dismiss on double jeopardy grounds that raised the same arguments.  The motions were denied.  The defendants sought relief by petitioning a single justice of this court pursuant to G. L. c. 211, § 3.  The single justice concluded that the trial judge properly denied the defendants' motions, and as a result, the single justice denied their petitions.  The defendants' appeals from the single justice's denial of relief are now before us.
            Summary of relevant facts.  "Because the defendant[s] raise[] a sufficiency challenge, we recite the facts the jury could have found, in the light most favorable to the Commonwealth."  Commonwealth v. Davis, 487 Mass. 448, 450 (2021), S.C., 491 Mass. 1011 (2023), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  Here, in the light most favorable to the Commonwealth, the jury could have found the following facts.  
            At 1:45 P.M. on January 11, 2018, Alexander Mervin was shot inside a parked vehicle in a parking lot on Whittier Street in Boston, resulting in his death.  An eyewitness to the shooting described the shooters as two African-American men, around five feet, nine or ten inches in height, and maybe in their twenties.  One of the shooters had a lighter skin tone than the other.  Both wore hooded sweatshirts, one red and the other black, and each was wearing the hood over his head.  They appeared to be looking for someone, and the witness saw one of them pointing, after which they passed Mervin, who appeared to be cleaning out a vehicle.  The two men took out their guns and walked back toward Mervin.  They approached the vehicle, and each shot Mervin twice.  They then walked out of the parking lot toward Ruggles Street.  A second witness, after hearing gunshots, saw two young African-American men, one dressed in full black and the other in black and gray, running from the Whittier Street parking lot toward Ruggles Street.  She saw one of the men shove a gun into his pocket.  At a certain point, she testified, they slowed to a walk.  She did not see anyone else in the area at that time.  A third witness, after hearing four gunshots, saw two African-American men of medium build running.  One was wearing a light gray hooded sweatshirt, and the other was wearing a darker, forest green hooded sweatshirt.  Both were wearing the hoods over their heads.  That witness did not see anyone else in the immediate vicinity.  A fourth witness heard the shots and saw two African-American men wearing dark hooded sweatshirts running from the back of Whittier Street toward Ruggles Street, although she claimed one of the two was wearing a white knit cap.  A responding police officer saw a young man in a nearby courtyard sprinting.  The young man was of medium height and build, and he was dressed in a black hooded sweatshirt.  
            Police recovered a live round of nine millimeter ammunition and two nine millimeter cartridge cases on the ground next to the vehicle into which the shooters fired.  Among other ballistics evidence recovered from inside the vehicle were two discharged bullet jackets with the same diameter as nine millimeter ammunition.[5] 
            Shortly before the shooting, video surveillance cameras captured two people entering the outdoor courtyard of an apartment complex on Whittier Street, approaching on Ruggles Street from the direction of Shawmut Avenue.  They were dressed in what appeared to be dark jackets, and one was also wearing a red hood.  Almost immediately after the shooting, the same video recording showed a pair of individuals returning at a brisk pace in the same direction.
            Cell site location information placed Moore near Whittier Street just after the time of the murder.  It placed Sicellon further away but in the general area some six minutes before the murder.  A rideshare service driver testified that on that same day, a few minutes before 2 P.M., he received a request for a ride from a location that was a short distance from Moore's home on Shawmut Avenue.  At the requested location, he picked up two African-American passengers who both appeared to be over twenty years old.[6]  These passengers behaved oddly during the ride, acting agitated, moving around, and looking scared.  They asked the driver to take a different route from the one displayed on an electronic map, and they were in a hurry to get out of the car when they arrived at their destination.  The ride had been purchased through a telephone number for Sicellon and with a credit card belonging to Sicellon's mother.
            Just over two weeks after the shooting, police encountered Sicellon and Moore.  Moore, who was wearing a gray coat, fled police and discarded the coat.  Police recovered it, and it tested positive for gunpowder primer residue, indicating that it had been in the vicinity of a discharged firearm or had otherwise come into contact with an item that had gunpowder primer residue on it.  Police also recovered a live round of nine millimeter ammunition from Moore's residence in Stoughton.  When police later asked where he lived, Moore listed other residences but omitted the Shawmut Avenue address even though it was listed as his address on his driver's license.
            Discussion.  We review the decision of the single justice pursuant to G. L. c. 211, § 3, for clear error of law or abuse of discretion.  See Perrier v. Commonwealth, 489 Mass. 28, 30 (2022).
            1.  Manifest necessity.  The defendants first argue that in spite of G. L. c. 234A, § 68C, the trial judge erroneously concluded that she lacked the discretion to ask the jurors whether they consented to further deliberations and, further, that her failure to exercise this discretion meant that a mistrial was declared over the defendants' objections without manifest necessity.  "State and Federal double jeopardy protections bar, as a general rule, retrial of a defendant whose initial trial ends over his objection and without a conviction" (quotation and citation omitted).  Ray v. Commonwealth, 463 Mass. 1, 3 (2012).  An exception to this rule exists, however, "where a mistrial is declared as a matter of 'manifest necessity.'"  Id., quoting Commonwealth v. Steward, 396 Mass. 76, 78 (1985).  Jurors' inability to reach a verdict "has long been considered the 'classic basis' for a proper mistrial" (citation omitted).  Ray, supra at 3-4.
            A trial judge's decision that there is manifest necessity for a mistrial is reviewed for abuse of discretion.  See Commonwealth v. Bryan, 476 Mass. 351, 356 (2017).[7]  A judge does not abuse her discretion in declaring a mistrial where she (1) provides counsel full opportunity to be heard, and (2) gives careful consideration to alternatives.  Ray, 463 Mass. at 4.  Here, the trial judge permitted defense counsel to be heard, and they raised the very argument that they now make before this court.  See id.
            The question then is whether the trial judge gave careful consideration to alternatives.  We conclude that she did.  When the jurors first reported that they could not reach a verdict and asked the trial judge for guidance, the trial judge did not declare a mistrial but issued a Tuey-Rodriquez instruction.  While we have described this as "the 'orthodox approach' to dealing with a deadlocked jury," it is not mandatory.  Ray, 463 Mass. at 5-6.
            When the jurors indicated a second time that they could not reach a verdict, the trial judge gave careful consideration to the defendants' request that she ask the jurors if they would consent to further deliberations.  This alternative is allowed for in G. L. c. 234A, § 68C, which provides in relevant part that if jurors "return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."  This language contemplates that jurors who have returned a second time without agreeing on a verdict may yet be sent out again so long as it is done with their consent.  See Commonwealth v. Jenkins, 416 Mass. 736, 739-740 (1994).  Even so, coercion must be guarded against, and "we give substantial weight to the discretion of the trial judge who was fully alert to the issues of coercion and the jury's right to call it quits."  Id. at 741.
            Nevertheless, the defendants argue that the trial judge made certain statements to the effect that she lacked discretion to ask the jurors if they would consent to continue deliberating.  They therefore argue that the trial judge failed to recognize, and so failed to exercise, her discretion in this regard when deciding to declare a mistrial.  See Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 259 n.10 (2002) ("Failure to exercise discretion is itself an abuse of discretion").
            The record belies the defendants' argument.  In fact, the trial judge stated plainly as to the requested inquiry, "I know that the statute permits it."  The trial judge's other statements, in context, suggested only her conclusion that such an inquiry was inappropriate in the particular circumstances.  For example, the trial judge stated that while the inquiry was permitted by the statute, there were concerns in practice about coercion, and she explained, "given the wording of the note, both notes, I don't think I've got the ability to do that in this case" (emphasis added).  In sum, the judge's statements, including her statement to the jury that she had "no discretion," were another way of saying that in the circumstances of this case, there existed a manifest necessity for a mistrial.  See Fuentes v. Commonwealth, 448 Mass. 1017, 1018 n.1 (2007).
            Having stated that G. L. c. 234A, § 68C, permitted the requested inquiry, the trial judge appropriately exercised her discretion not to inquire on the ground that doing so in the circumstances before her risked coercing a verdict from the jurors.  In exercising her discretion, she considered the length of deliberations, the nature of the questions asked by the jury, and the unequivocal forcefulness of the jurors' repeated statements that they could not agree.[8]  See Ray, 463 Mass. at 4-5 & n.4.  And indeed, the text of the jurors' notes bears out the trial judge's analysis.  The jurors specifically stated in their second note that they had carefully considered the evidence, engaged in further discussion, and nevertheless remained deadlocked, a situation which, they wrote, "will not change."
            Moreover, the defendants' argument that a judge must seek a jury's consent to further deliberations before declaring a mistrial is foreclosed by this court's precedent.  In Fuentes, 448 Mass. at 1017-1018, we considered a case where jurors sent a note to the trial judge asking about deadlock, after which the trial judge issued a Tuey-Rodriquez instruction.  On receiving a second note from jurors saying that they could not reach a unanimous verdict, the trial judge declared a mistrial without considering alternatives "other than to say that she had no other choice."  Id. at 1018.  We found that "[n]othing in our case law" or in the nearly identical language of the then-applicable G. L. c. 234, § 34, required the judge to ask "as a matter of course" or in "the circumstances before" her whether the jurors would consent to further deliberations.  Id.  Where the Tuey-Rodriquez instruction was given and where the jury's deliberations were due and thorough, as evidenced by their length and by the conscientiousness of questions asked by jurors, "the judge did not abuse her discretion in declining to ask whether the jury would consent to deliberating further."  Id. at 1019.  The facts of this case are materially indistinguishable from Fuentes.  We therefore conclude, as the single justice held, that the trial judge did not err in declaring a mistrial or in denying the defendants' motions to dismiss insofar as they argued that a mistrial was declared without manifest necessity.  This result is consonant with the purposes of § 68C, which "stands guard to prevent jurors . . . from being coerced into reaching a verdict in the face of views conscientiously reached and held" (citation omitted).  Jenkins, 416 Mass. at 737 (interpreting G. L. c. 234, § 34).
            2.  Sufficiency of the evidence.  Following a mistrial, double jeopardy protections permit the Commonwealth to "retry a defendant only if it has presented evidence at the [previous] trial that, if viewed in the light most favorable to the Commonwealth, would be sufficient for a rational trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt" (alteration and citation omitted).  Pinney v. Commonwealth, 479 Mass. 1001, 1001-1002 (2018).  See Latimore, 378 Mass. at 676-677.  The Commonwealth does not need to introduce direct evidence to meet this standard.  See Davis, 487 Mass. at 462.  "Circumstantial evidence is sufficient to find someone guilty beyond a reasonable doubt and inferences drawn from such circumstantial evidence 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Id., quoting Commonwealth v. Grandison, 433 Mass. 135, 141 (2001).  Where the evidence is circumstantial, all reasonable inferences must be drawn in favor of the Commonwealth.  See Commonwealth v. Jones, 477 Mass. 307, 316 (2017).  Even so, a conviction may not be based on "speculation," "conjecture," or "inference piled upon inference."  Commonwealth v. Ayala, 481 Mass. 46, 51 (2018); Jones, supra.
            Here, the defendants claim that the evidence was insufficient as to the identities of the two assailants.  Where the evidence was not direct but circumstantial, we ask whether in the light most favorable to the Commonwealth, a trier of fact reasonably could infer from the evidence that Sicellon and Moore were the shooters beyond a reasonable doubt.  See Ayala, 481 Mass. at 53.  From the evidence described supra, a rational fact finder could conclude beyond a reasonable doubt that they were.  Consequently, the trial judge did not err in denying the defendants' motions to dismiss, and the single justice did not commit a clear error of law or otherwise abuse her discretion in denying their petitions on this ground.
            Conclusion.  Discerning no error in the motion judge's denial of the defendants' motions to dismiss the charges against them on double jeopardy grounds, we conclude that the single justice did not commit an error of law or otherwise abuse her discretion in denying relief under G. L. c. 211, § 3.  Consequently, we affirm.
            Judgments affirmed.
            Merritt Schnipper for Jerion Moore.
            Brian A. Kelley for Nicholas Sicellon.
            Paul B. Linn, Assistant District Attorney (David S. Bradley, Assistant District Attorney, also present) for the Commonwealth.
 
 
 
            [1] Although Nicholas Sicellon and Jerion Moore commenced these actions by filing petitions in the county court, for convenience, we refer to them as the "defendants."
            [2] Sicellon was indicted for unlicensed possession of a firearm, as a subsequent offense.  See G. L. c. 269, § 10 (a), (d).
            [3] See Commonwealth v. Rodriquez, 364 Mass. 87, 101-102 (1973) (Appendix A); Commonwealth v. Tuey, 8 Cush. 1, 2-3 (1851).
            [4] General Laws c. 234A, § 68C, provides:
"If a jury, after due and thorough deliberation, returns to court without having agreed on a verdict, the court may state anew the evidence or any part of the evidence, explain to them anew the law applicable to the case and send them out for further deliberation; but if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."
Prior to 2016, these provisions were codified in the nearly identical language of G. L. c. 234, § 34.  See St. 2016, c. 36, §§ 1, 5.
            [5] Testimony regarding these two discharged bullet jackets found inside the vehicle sufficed to establish that they had the same diameter as nine millimeter ammunition or .38 caliber ammunition, which types of ammunition, it was testified, have the same diameters but different lengths.  The testifying witness could not discern the length of the ammunition from these discharged bullet jackets.
            [6] Video surveillance footage from a Massachusetts Bay Transportation Authority bus showed two people walking away from Moore's home and toward the pickup location some minutes after the shooting.
            [7] The dockets do not indicate that either defendant moved for dismissal on double jeopardy grounds after the first trial.  Even so, "a double jeopardy claim must be considered even if it is raised for the first time after a defendant's retrial."  Commonwealth v. Adams, 485 Mass. 663, 669 (2020).
            [8] We conclude that in performing this analysis, the trial judge was also finding that deliberations were "due and thorough."  See G. L. c. 234A, § 68C; Fuentes, 448 Mass. at 1019.